# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GLADYS WEST,**

          **Plaintiff,**

**-vs-**                                   **Case No. 6:05-cv-1336-Orl-22DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for supplemental security income payments. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

### *PROCEDURAL BACKGROUND*

Plaintiff filed an application for supplemental security income (SSI) on August 23, 2002, claiming that she became disabled on May 1, 2000 (R. 59-63). The application was denied initially and upon reconsideration (R. 27-8; 35-7). Plaintiff then requested and received an administrative hearing before an Administrative Law Judge ("the ALJ"), and the ALJ issued an unfavorable decision on April 5, 2005 (R. 11-19). Plaintiff filed a request for review and submitted additional evidence, however the request was denied by the Appeals Council (R. 4-6), allowing the ALJ's decision to become the final decision of the Commissioner. This action timely followed.

Due to difficulties in locating the administrative record, the case was remanded, pursuant to sentence six of 42 U.S.C. § § 405(g) and 1383(c)(3). Upon the filing of the administrative record, the case was reopened, and briefed. It is now ripe for review.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled as a result of high blood pressure, arthritis, and "sever[e] head and neck pain on the right side" with burning sensation (R. 71).

Plaintiff was forty years old as of the date of the ALJ's decision (R. 19, 59), with a high school education and past relevant work experience as a customer service representative, accounting clerk, cosmetologist, and cashier. (R. 72, 80-82, 84, 86, 115.)

The pertinent medical evidence of record[1] is relatively sparse. By way of summary, Plaintiff presented to Dr. Karamali Bandealy on August 29, 2002, complaining of significant joint and muscle pains, morning stiffness and fatigue throughout the day (R. 144-45). On examination, Plaintiff maintained equal and normal deep tendon reflexes with no sensory or motor deficits, stiffness or rigidity noted. Dr. Bandealy noted soreness in the joints of both hands as well as soreness in the eighteen trigger points usually associated with fibromyalgia. Plaintiff was assessed with polyarthritis of the hands and feet of undetermined cause; fibromyalgia syndrome; hypertension and possible

---

[1] Plaintiff presented records from Dr. Javaid Sheikh, M.D. for the period May 11, 2004 through August 12, 2004 (R. 192-226) to the Appeals Council, which declined review. In summary, these records established that Dr. Javaid Sheikh, a rheumatologist, examined Plaintiff and found her to have full power in all of her muscle groups, and no evidence of swelling or synovitis in the joints of her hands, feet, wrists, elbows or knees (R. 218-19). Dr. Sheikh recorded a normal range of motion in her elbows, shoulders, knees and hips (R. 219) and concluded that Plaintiff "most likely" had fibromyalgia but could find no clinical evidence of inflammatory arthritis or active connective tissue disease (R. 219). As these records were not before the ALJ, they are relevant here only to the extent (if any) that Plaintiff contends that the evidence meets the standards for a sentence six remand for consideration of "new, material evidence." As Plaintiff makes no such argument, the Court limits its review to only those documents which were before the ALJ at the time of the decision.

degenerative joint disease in her knees (R. 145). Plan was to send Plaintiff for further testing and medication was prescribed..

Lab results dated August 31, 2002 revealed a negative RA[2] screen and a negative anti-nuclear anti-body test (R. 137, 140), but Plaintiff's sedimentation rate[3] was 71 (R. 138). X-rays conducted on October 2, 2002, revealed normal findings (other than osteopenia) in the cervical and lumbar spines, some soft tissue swelling in the hands and feet, and normal knees and ankles (R. 132).

Plaintiff returned to Dr. Bandealy on October 17, 2002 (R. 133). Other than her sedimentation rate, her labs were described as "generally unremarkable." Plaintiff's blood pressure was 160/100. Physical examination revealed no acute focal sensory or motor deficits, and no stiffness or rigidity. Plaintiff was noted to have soreness in the trigger points, but "no significant soft tissue noted at this time." *Id.* Her MCP, PIP and MTP joints were "mildly sore." Medications were prescribed and follow up was to be in 2 months time. *Id.*

On November 20, 2002, consultative examiner Dr. Rosillo examined Plaintiff for the state agency (R. 146-48). On examination, Plaintiff had a normal gait, could walk on her heels but not on toes, and could squat and hop (R. 147). She had 5/5 grip strength and some limitation on range of motion. Dr. Rosillo diagnosed degenerative arthritis and hypertension under fairly good control, and opined that Plaintiff could lift 20 pounds occasionally and frequently 10 pounds, and could do "light activity" involving standing and/or walking for six hours with breaks every two hours, with no restriction on seating or ambulating. (R. 148.)

---

[2]Rheumatoid arthritis.

[3]This is a blood test used to detect and monitor inflammation in the body. A normal sedimentation rate for females is 0-20 millimeters per hour. *See* http://www.medicinenet.com/sedimentation_rate/article.htm. A rate of 71 is therefore notably high.

Plaintiff returned to Dr. Bandealy on January 2, 2003, complaining of intermittent lower and middle back pain (R. 181). Plaintiff stated that she was walking for exercise forty to forty-five minutes at a time, three times per week (R. 181). On physical examination, tenderness was detected in the joints in her hands and feet, but it was noted that she retained a full range of motion in all four extremities and no muscle wasting was found in any of her joints *Id*. Her lab results were "unremarkable," save for a sedimentation rate of 44. Plaintiff was to continue with her medications and follow up in two months.

On February 25, 2003, a non-examining state agency physician (Dr. Collins) reviewed the medical records and completed a physical residual functional capacity assessment (R. 152-59). The physician opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, sit, stand and walk for about six hours in an eight hour day, and push and pull without limitations.

On March 4, 2003, Plaintiff presented to a consultative psychologist for a general clinical evaluation with mental status (R. 160-62). On examination, Plaintiff had no prominent gait abnormalities or gross motor coordination problems (R. 161). She was alert and well oriented, without symptoms of psychosis or suicidal or homicidal tendencies. She had good recall, suggesting no memory impairment, and speech and thought processes were logical and coherent. She reported a limited ability to drive and a typical day of watching television and limited walking (R. 161). Plaintiff identified pain as the major stressor in her life. In April 2003, non-examining state-agency psychologist reviewed the record, completed a Psychiatric Review Technique form, and determined that Plaintiff did not have a "severe" mental impairment. (R. 163).

Plaintiff continued to complain of pain, and Dr. Bandealy continued to record similar findings of tenderness and swelling during examinations on March 6, 2003, May 8, 2003, July 3, 2003, and

September 11, 2003 (R. 177-80). On July 3, 2003, Dr. Bandealy noted that Plaintiff ambulates upright with no difficulty, and encouraged her to increase her level of exercise to at least 30 to 45 minutes, three times a week (R. 178). Plaintiff's sedimentation rate was at 40 on September 11, 2003 (R. 177).

Plaintiff appeared and testified at her hearing regarding her pain and limitations. She testified that she has legal custody of her minor niece and nephew, and also lives with her three year old granddaughter (R. 231-32). Plaintiff stated that severe pain in her hands interfered with her ability to write and grip objects (R. 234). She takes medications which help relieve the pain (R. 234-35), but these can cause drowsiness. She walks twice a week for about thirty minutes for exercise, and she could stand for 5-20 minutes and sit for 15 minutes (R. 235). Her husband helps her take care of the three year old granddaughter; she drives a car; and does no housework except for washing a few dishes (R. 237-38). On better days, she goes to church (R. 243). No vocational expert testified.

The record also includes written statements from Plaintiff about her pain and activity level. Plaintiff stated on November 8, 2002, that she "cannot stand for only 2-3 minutes" and could sit for only five minutes without "serious pain all over." (R. 90). On January 31, 2003, Plaintiff stated that she had pain "everyday, all day" (R. 110), but that the medicine "helps to ease the pain." (R. 111).

The ALJ reviewed the evidence and found that Plaintiff had the impairments of fibromyalgia and hypertension, but did not have an impairment or combination of impairments severe enough to meet or equal the Listings. The ALJ found that Plaintiff had the residual functional capacity to lift and carry ten to fifteen pounds occasionally and ten pounds frequently, and could sit for six hours and stand or walk for about two hours in an eight-hour work day (R. 17-19). The ALJ found Plaintiff's allegations of pain and limitations to be "less than fully credible" (R. 17). The ALJ then relied upon

the Medical-Vocational Guidelines ("the grids"), 20 C.F.R. part 404, subpart P, to determine that an individual with Plaintiff's vocational profile was not disabled (R. 19, Findings 11 and 12).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff asserts that the decision below was not supported by substantial evidence in that the ALJ erred in rejecting Plaintiff's allegations of disabling pain, based solely on the lack of objective evidence. The Court is not persuaded.

Although Plaintiff paints the issue as a lack of substantial evidence, the argument is actually whether the ALJ analyzed Plaintiff's allegations of disabling pain in light of the correct legal standard. Plaintiff contends that there are "two pain standards" -- the Eleventh Circuit's case law standard and the Commissioner's standard, expressed in 20 C.F.R. § 416.929 (2006) and SSR96-7p.

In this circuit, pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

Plaintiff finds this standard to be at odds with the Commissioner's own standard:

We must always attempt to obtain objective medical evidence and,
when it is obtained, we will consider it in reaching a conclusion as to whether
you are disabled. However, we will not reject your statements about the
intensity and persistence of your pain or other symptoms or about the effect
your symptoms have on your ability to work solely because the available
objective medical evidence does not substantiate your statements.

20 C.F.R. § 416.929(c)(2) (2006). *See also* Social Security Ruling 96-7p. ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.")

Here, the ALJ noted that he "considered the allegations of the claimant and finds them less than fully credible due to a lack of support in the clinical and laboratory findings of record." (R. 17). Thus, argues Plaintiff, the ALJ made an impermissible "medical evidence only" credibility finding which must be reversed. The Court disagrees.

There is no question that pain alone can be disabling, even when its existence is unsupported by objective evidence, *see, e.g. Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), but it is also true that an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). These statements are not inconsistent. *See Elam v. Railroad Retirement Bd.* 921 F.2d 1210, 1215 (11th Cir.1991) (pain standard is "fully consistent" with the regulations). The pain standard utilized by the courts incorporates two different situations: one in which a claimant has objective medical evidence *of the pain itself* and one in which a claimant has *no* objective medical evidence of *pain,* but has objective medical evidence of a medical condition that is of such severity that resulting pain can be *inferred. See, e.g.*, *Ogranaja v. Commissioner of Social Security,* 186 Fed. Appx. 848 (11th Cir. 2006) (not selected for publication in Federal Reporter) (setting forth pain standard and rejecting contention that ALJ failed to consider that herniated disc could be expected to give rise to the claimed pain); *Grimes v. Barnhart* 2006 WL 1075253, *2 (N.D. Ala. 2006) ("While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain

itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself." [internal citations omitted]); *Turner v. Commissioner of Social Security*, 182 Fed.Appx. 946, 949 (11th Cir. 2006) (not selected for publication in Federal Reporter) ("Although Turner's degenerative disc disease could reasonably cause pain, the pain she alleged is disproportionate to the medical evidence.").

The regulations and SSR cited by Plaintiff are not to the contrary. They state, in essence, that failure to meet the first part of the pain standard (medical proof of the pain itself) will not disqualify a claimant from the opportunity to show that the pain is nonetheless disabling, pursuant to the second prong of the pain standard. Here, the ALJ did not discredit Plaintiff's allegations of disabling pain simply because there was no proof of the pain, but because there was *also* no proof that her fibromyalgia was of such severity that it could reasonably be expected to give rise to the alleged pain. The ALJ thus applied the proper legal standard. The Court moves on to consider the issue of whether this finding is supported by substantial evidence.

Initially, Plaintiff contends that reversal is necessary in that the ALJ did not explicitly set forth the "clinical and laboratory findings of record" he referred to in his credibility determination. Such is not fatal, however, as long as the credibility finding is *implicit*. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). Thus, "[a]lthough this circuit does not require an explicit finding as to

credibility, . . . the implication must be obvious to the reviewing court." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citations omitted). Here, although the ALJ did not set forth his findings explicitly[4] he did so implicitly, and if those findings are supported by substantial evidence, they must be affirmed.

Plaintiff contends that the findings are not so supported, in that Plaintiff had the requisite clinical signs of fibromyalgia (tender points), and her list of medications and limited activities of daily living are corroborating evidence of her condition. Again, the Court is not persuaded.

The ALJ did not ignore Plaintiff's diagnosis of fibromyalgia, but, in fact, made a specific finding as to the existence of the impairment. As noted by the Commissioner, however, mere diagnosis of an impairment does not *per se* establish disability. *See Davis v. Barnhart,* 153 Fed. Appx. 569 (11th Cir. 2005) (not selected for publication in the Federal Reporter):

> Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself. See 42 U.S.C. § 423(d)(1)(A) . . . Therefore, despite Davis's diagnosis of degenerative disc disease, substantial evidence in the record nevertheless supports the conclusion Davis's impairment does not prevent him from performing substantial gainful activity.

This is true even for fibromyalgia. *See, e.g., Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005). And while it is true that the ALJ did not discuss Plaintiff's medications in detail, "[o]ur standard of review is ... whether the ALJ's conclusion as a whole was supported by substantial evidence in the record ." *Dyer*, 395 F.3d at 1211. The ALJ is not required to "specifically refer to every piece of evidence in

---

[4]In formal findings, the ALJ found that Plaintiff's allegations regarding her limitations "are not totally credible for the reasons set forth in the body of the decision." (R. 19).

his decision" so long as the decision is sufficient to allow this Court to conclude the ALJ considered the claimant's medical condition as a whole. *Id.* The ALJ did just that here.[5]

As set forth in his decision and above, the record shows that Plaintiff had tender points associated with fibromyalgia, but her laboratory and clinical findings were negative, in large measure, for signs that her pain was disabling or that her impairment was severe.[6] There are no indications that her treating physician felt Plaintiff's pain to be disabling. Her treating physician placed no restrictions on her activities and, in fact, Plaintiff was encouraged to *increase* her physical activity. While Plaintiff continually reported pain to her physician at her regularly scheduled visits, there are no reports of any hospitalizations or emergency room visits, and Plaintiff only saw her physician every two months or so, with no record of more frequent visits being requested due to unmanageable pain.

Both the consultative physician and the state agency non-examining physician found that Plaintiff could perform the equivalent of light work. There is no contrary opinion in the record. Although Plaintiff complained of decreased grip strength, as noted by the ALJ, Dr. Rosillo found full grip strength on examination (R. 146). Moreover, Plaintiff's allegations of an inability to sit or stand for more than twenty minutes is contradicted by her self-described half hour walks. The record indicates that Plaintiff was noted to have a normal gait, full strength in her legs and normal range of motion in the lumbar spine (R. 146-7). As for her reports of daily activities, while Plaintiff did note limited activities due to pain, she also noted that she drives, has custody of minor children, goes to church on good days, and walks for exercise regularly. It is the task of the ALJ to weigh conflicting

---

[5] Moreover, as noted above, Plaintiff indicated that her medications helped decrease her pain.

[6] For example, Plaintiff's range of motion was intact in her extremities, no muscle wasting was noted and her grip strength was normal.

evidence, not the task of the Court. The Court finds the credibility determination to be supported by substantial record evidence.

A final word is in order. There can be no doubt that Plaintiff has an impairment that causes her pain and discomfort. The issue, however, is not whether Plaintiff has pain, but whether Plaintiff is disabled within the meaning of the Social Security Act and the Commissioner's regulations. Although Plaintiff, in her brief, contends that the very nature of her illness belies objective medical evidence, it is worth noting that the *only* evidence that Plaintiff is disabled comes from Plaintiff's subjective testimony. Her doctor, a rheumatologist and therefore a specialist in the field, has *not* opined that she is disabled, and has placed no restrictions upon her activities. Absent evidence sufficient to satisfy either prong of the pain standard, the ALJ's decision should be affirmed.

### *RECOMMENDATION*

As the decision of the Commissioner was made in accordance with proper legal standards and is supported by substantial evidence, it is **respectfully recommended** that it be **AFFIRMED.** Should the District Court adopt this recommendation, the Clerk should enter judgment accordingly and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 14, 2007.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy